

FILED
2021 Apr-19 PM 02:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

|  |  |  |
|---|---|---|
| David Hemphill, Michael Carter, and Jerry Pruitt, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 7:20-cv-00861-LSC |
| City of Northport, Alabama, | ) ) | |
| Defendant. | ) ) ) | |

## Memorandum of Opinion and Order

In 2018, eight African-American firefighters sued the City of Northport, Alabama under Title VII of the Civil Rights Act of 1964 and under 42 U.S.C. § 1981. *See Mitchell v. City of Northport*, No. 7-18-cv-01825-LSC, 2019 WL 3322634 (N.D. Ala. July 24, 2019). Northport then moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).

This Court granted Northport's motion as to seven of the eight firefighters. Each of them failed to state a plausible claim for relief. They also failed to exhaust Title VII's administrative-remedy requirements. *See* 42 U.S.C. § 2000e-5.

Three of those dismissed firefighters have filed a new lawsuit against the same defendant—Northport—and Northport has again moved to dismiss under Rule

12(b)(6). Northport's motion is due to be granted. The doctrine of *res judicata* precludes their claims that were brought or that could have been brought in the first lawsuit. *See Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235 (11th Cir. 1999). And all of the plaintiffs' claims—even those not barred by *res judicata*—fail to satisfy Rule 8(a)(2)'s pleading requirement. Fed. R. Civ. P. 8(a)(2) (every complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief").

## I.   Background

### A.   Allegations[1]

David Hemphill, Michael Carter, and Jerry Pruitt ("the plaintiffs") all work or worked as firefighters at the Northport Fire Department ("the department"). (Doc. 1 at ¶¶ 11, 17, 21.) For years, all three were "generally considered" to be "exceptional employees." (*Id.* at ¶¶ 14, 19, 25.)  That changed in 2013 when Bart Marshall became the department's chief; according to the plaintiffs, Marshall scrutinized them "more closely" and disciplined them "more harshly" than past chiefs. (*Id.* at ¶ 6.) They offer only one example:

---

[1]     Here—at the motion-to-dismiss stage—the Court accepts the plaintiffs' well-pleaded factual allegations as true and construes them in the light most favorable to the plaintiffs. *Baloco ex rel. Tapia v. Drummond Co., Inc.*, 640 F.3d 1338, 1345 (11th Cir. 2011) (citing *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010)).

15. In October 2015, Hemphill received a harsh warning from Chief Marshall.  He was told to report to Station 1, where he was informed that he was cutting his military time from 21 days to 7 days. Chief Marshall further stated, "he didn't feel it was right for him to pick and choose his military time". Hemphill explained that he does not get to choose certain days to report for duty. Chief Marshall responded by laughing as Hemphill left the office.[2]

(*Id.* at ¶ 15.)

The plaintiffs also take issue with Marshall's hiring practices. They claim that Marshall has never hired a minority applicant. (*Id.* at ¶ 26.) One plaintiff (Pruitt) even accuses him of rewriting a vacant position's requirements to exclude minority workers. (*Id.* at ¶ 27.)

Many of the plaintiffs' grievances concern the Northport Fire Organization ("NFO"). Marshall and other high-ranking department officials founded the NFO in 2017 and, since then, Marshall has consistently promoted NFO-affiliated firefighters over "more qualified" non-NFO firefighters. (*Id.* at ¶ 6.) The plaintiffs voiced these NFO-related concerns to a special committee formed to investigate

---

[2]     The plaintiffs offer several legal conclusions—they, for instance, claim that Marshall "begin [sic] to implement procedures, policies, practices that provided a hostile work environment for the plaintiffs" (Doc. 1 at ¶ 6)—but these vague, conclusory statements are unworthy of a presumption of truth. Courts "afford no presumption of truth to legal conclusions and recitations of the basic elements of a cause of action." *Franklin v. Curry*, 738 F.3d 1246, 1248 n.1 (11th Cir. 2013) (per curium).

Marshall's alleged wrongdoing, and none of them have received a promotion since complaining. (*Id.* at ¶ 27.)

In addition to his Marshall and NFO-related grievances, Carter claims to have suffered "verbal abuse" at the hands of his colleagues. (*Id.* at ¶ 20.) He provides but one example:

> 20. Lt. Aultman . . . used obscene language talking in front of firefighters about my decisions. [I] approached Lt. Aultman and quietly asked him if there were problems he wanted to discuss with me and he said no . . . There was no discipline taken against Lt. Aultman enabling the behavior to continue.

(*Id.*) He never specifies what "obscene language" Lieutenant Aultman used, nor does he link those obscenities to his status as an African American.

Relying on these sparse and unspecific allegations, the plaintiffs sued Northport under Title VII, 42 U.S.C. § 2000e. Each plaintiff claims retaliation, a racially hostile work environment, and racial disparate-treatment discrimination.

## B.   *Mitchell v. City of Northport*

### 1.

The plaintiffs filed a nearly identical lawsuit in 2018.[3] *See Mitchell*, 2019 WL 3322634. There, like here, the plaintiffs alleged "harsh" treatment and scrutiny by

---

[3]     The Court takes judicial notice of the pleadings filed in *Mitchell vs. City of Northport*, No. 7:18-cv-01825-LSC and considers those pleadings without converting Northport's 12(b)(6) motion into a motion for summary judgment. *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (per curium) (citation omitted); *see Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999).

Marshall, favoritism for NFO-affiliates, "verbal abuse" from Lieutenant Aultman, and an inability to earn promotions after voicing NFO-related concerns. This lawsuit's complaint includes two (and only two) post-*Mitchell* allegations. Those allegations are:

> 27. In November of 2019 there was a position that became available with the opportunity to be promoted. Chief Marshall rewrote the requirements of the possible [sic] to exclude older and minority employees.

> 30. Plaintiffs all filed a subsequent lawsuit on September 27, 2018 their claims was [sic] dismissed due the [sic] Plaintiffs' not exhausting administrative remedies under Title VII of the Civil Rights Act of 1964. Plaintiffs have continued to experience a hostile work environment and denial of promotion as a result.

(Doc. 1 at ¶¶ 27, 30.) Beyond these two paragraphs, this entire lawsuit—every incident and every allegation—took place *before* the plaintiffs filed their complaint in *Mitchell*.

## 2.

In *Mitchell*, like here, all three plaintiffs brought Title-VII claims for retaliation and a racially hostile work environment. And two of the three—Hemphill and Carter—sued for disparate-treatment discrimination. The Court dismissed each claim. As to the retaliation and hostile-work-environment claims the Court found as follows:

Plaintiffs allege that Defendants retaliated against them and refused to promote them because they participated in the special investigation of Chief Marshall. Plaintiffs' allegations are due to be rejected because they have failed to allege facts that plausibly indicate that they participated in protected activity under Title VII.

. . .

Plaintiffs' Amended Complaint offers a number of bare legal conclusions that Defendants "harassed" them, created a "hostile work environment," and took actions "to harass them" or "to create a hostile work environment." These legal conclusions are unaccompanied by facts plausibly indicating how Defendants acted such that the Court could that such actions plausibly rose to the level of unlawful activity. . . . Without any indication as to the contents of these statements, Plaintiffs' allegations of the use of offensive language and threats do not plausibly indicate unlawful harassment because they are not alleged to be based on a protected characteristic. Accordingly, Plaintiffs' harassment claims are due to be dismissed.

*Mitchell*, 2019 WL 3322634, at *8. The Court dismissed Hemphill and Carter's disparate-treatment claims on the same ground.

Plaintiffs' Amended Complaint fails to allege facts sufficient to establish a *prima facie* case of discrimination or plausibly suggest intentional discrimination against Hemphill or Carter as their "evidence" of racial discrimination is largely limited to the fact that they are African American and Chief Marshall, who allegedly took most of the adverse actions against Plaintiffs, is Caucasian.

*Id.* at *6.

## II.   Standard of Review

Northport's Rule 12(b)(6) motion is now before the court. A complaint survives a Rule 12(b)(6) motion if it contains "sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" *Lord Abbett Mun. Income Fund Inc. v. Tyson*, 671 F.3d 1203, 1207 (11th Cir. 2012) (quoting *Ashcroft Iqbal*, 556 U.S. 662, 678 (2009)). Gauging plausibility is a two-step process. The Court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Then the Court "assume[s] the veracity" of the well-pleaded factual allegations and determines whether those allegations "plausibly give rise to an entitlement to relief." *Id.*

### III.  Analysis

Northport's motion is due to be granted. The doctrine of *res judicata* bars every claim that the plaintiffs brought or could have brought in *Mitchell*, and every claim—even those not barred by *res judicata*—fail to satisfy Rule 8(a)(2)'s pleading requirements.

### A.  *Res Judicata* Bars Every Claim the Plaintiffs Raised or Could Have Raised in *Mitchell*.

*Res judicata* prohibits "a party from re-litigating a claim where a judgment on the merits (involving the same claim and the same parties) exists from a prior action." *Adams v. S. Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1289 (11th Cir. 2007). It applies when (1) a court of competent jurisdiction rendered a prior decision, (2) the prior decision was a "final judgment on the merits," (3) the prior case and the instant case have "substantial identity of parties" and (4) both cases involve "the

same cause[s] of action." *Manning v. City of Auburn*, 953 F.2d 1355, 1358 (11th Cir. 1992). If applicable, the doctrine bars all "claims which were raised or could have been raised" in the prior action. *Ragsdale*, 193 F.3d at 1238 (citing *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1501 (11th Cir. 1990)). The Court will address each element in turn.

First, a court of competent jurisdiction rendered the *Mitchell* decision. The *Mitchell* plaintiffs alleged violations of two federal statutes, Title VII and 42 U.S.C. § 1981, so the deciding Court—this Court—had subject matter jurisdiction under 28 U.S.C. § 1331. The plaintiffs' failure to exhaust their administrative remedies did not affect or undermine this Court's jurisdiction. *Fort Bend Cnty., Tex. v. Davis*, 139 S.Ct. 1843 (2019). "Title VII's charge-filing requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts." *Id.*

Second, *Mitchell* was "a final judgment on the merits" for the seven dismissed plaintiffs. For each cause of action raised by each of those plaintiffs, the Court listed the legal elements, compared those legal elements to the complaint's well-pleaded factual allegations, and then found a lack of facial plausibility. The Court alternatively dismissed their Title VII claims for failure to exhaust Title VII's administrative-remedy requirements. The resulting order was a final and merits-

based decision. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n. 3 (1981)

("The dismissal for failure to state a claim under Federal Rule of Civil Procedure

12(b)(6) is a 'judgment on the merits.'"); *Hall v. Tower Land and Inv. Co.*, 512 F.2d

481, 483 (5th Cir. 1975) ("[T]his Circuit has held that granting defendant's motion

to dismiss for failure to state a claim upon which relief can be granted operates as an

adjudication on the merits . . . ."); [4] *see Lobo v. Celebrity Cruises*, *Inc.*, 704 F.3d 882,

892 (11th Cir. 2013) (same).

The Eleventh Circuit reached the same conclusion on similar facts in *Garnett*

*v. Southwest Airlines Company*, 829 F. App'x 506 (11th Cir. 2020). In *Garnett*, a

federal district court dismissed a plaintiff's Title VII claim for failure to state a claim

and for failure to exhaust the statute's administrative remedies. *Id.* at 507. Instead of

appealing that dismissal order, the plaintiff filed a new lawsuit in the same district

court. *Id.* The district court then dismissed that secondary suit under the doctrine of

*res judicata*. *Id.* at 506. The Eleventh Circuit agreed with the district court's *res*

*judicata* finding, reasoning that the two-pronged original dismissal—dismissal for

failure to state a claim *and* for failure to exhaust Title VII's administrative

remedies—operated as an adjudication on the merits:

---

[4]      In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the (former) Fifth Circuit handed down before the close of business on September 30, 1981.

Res judicata bars a claim when a court of competent jurisdiction has issued a final judgment on the merits in another case that involves the same parties or those in privity with them and that involves the same cause of action. **The resolution of case 19-2029 constituted a final judgment on the merits because the district court dismissed Garnett's complaint for failure to state a claim and for failure to exhaust administrative remedies**, and he failed either to avail himself of the leave he was given to amend his pleading or to appeal.

*Id.* at 507. The same reasoning applies here: This Court dismissed the *Mitchell* claims for failure to state a claim and for failure to exhaust administrative remedies, the plaintiffs failed to avail themselves of their opportunity to appeal, so the resulting dismissal was a final and merits-based decision.

Third, this case and *Mitchell* have "substantial identity of parties" because every party in this case was also a party in *Mitchell*. *See Hurt v. Pullman, Inc.*, 764 F.2d 1443, 1447–48 (11th Cir. 1985).

Now to the fourth and final element. Here the Court must determine whether the instant action and the prior action (*Mitchell*) involve the same claims or causes of action. According to the Eleventh Circuit, a "cause of action is the same for *res judicata* purposes if it 'arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action.'" *Lobo v. Celebrity Cruises, Inc.*, 704 F.3d 882, 893 (11th Cir. 2013). The Court will separately analyze each plaintiff and every claim.

1.

Hemphill's race-discrimination and hostile-work-environment claims are the same causes of action he litigated in *Mitchell*. In *Mitchell*, he alleged the following:

> 29. Hemphill is the only African American employee who [sic] entitled to military leave of absence pursuant to the Code of Alabama Section 31-2-13.

> 32. In or around October 2015, Hemphill received a harsh warning from Chief Marshall. Hemphill was told to report to Station 1, where Hemphill was informed that Chief Marshall was cutting Hemphill's military time from 21 days to 7 days. Chief Marshall further stated, "he didn't feel it was right for Hemphill to pick and choose his military time." Hemphill explained that he does not get to choose certain days to report for duty. Chief Marshall responded by laughing as Hemphill left the office.[5]

The Court considered these allegations and found them insufficient to state a plausible claim for relief.

> Plaintiffs' Amended Complaint fails to allege facts sufficient to . . . plausibly suggest intentional discrimination against Hemphill . . . For example, Hemphill alleges that he was the only African American

---

[5]     In *Mitchell*, the plaintiffs' hostile-work-environment claims relied on "bare legal conclusions." The Court acknowledged these conclusions and then disregarded them:

> Plaintiffs' Amended Complaint offers a number of bare legal conclusions that Defendants "harassed" them, created a "hostile work environment," and took actions "to harass them" or "to create a hostile work environment." These legal conclusions are unaccompanied by facts plausibly indicating how Defendants acted such that the Court could conclude that such actions plausibly rose to the level of unlawful activity.

The Court finds no distinction between Hemphill and Carter's current hostile-work-environment claim and their claims in *Mitchell*. Their current claims arise from the same nucleus of operative fact—or, more accurately, from the same legal conclusions—as their claims in *Mitchell*.

employee who was eligible for military leave and that Chief Marshall changed the Northport Fire Department's military leave policy to target him. But, the facts fail to provide a plausible basis for the conclusion that this decision was the result of intentional and/or unlawful discrimination based on Hemphill's race.

*Mitchell*, 2019 WL 3322634, at *6. Hemphill now alleges the same "harsh warning,"

the same reduction in leave time, and the same disparate treatment:

> 15. In October 2015, Hemphill received a harsh warning from Chief Marshall. He was told to report to Station 1, where he was informed that he was cutting his military time from 21 days to 7 days. . . . During the investigation into the actions of the Chief Marshall, it was discovered that policy was being changed due to the fact that Hemphill is the only employee who uses. There was previous [sic] two employees, Hemphill and a Caucasian male.

(Doc. 1 at ¶ 15.) These contentions arise from "the same factual predicate" as

*Mitchell* and are precluded as a matter of law. *Ragsdale*, 193 F.3d at 1237.

**2.**

*Res judicata* also precludes Carter's disparate-treatment and hostile-work-

environment claims. His *Mitchell* claims rested on the following:

> 54. Carter has been suffering verbal abuse from subordinates who are members of the NFO since 2016.

> 55. One incident in particular, Lt. Aultman, all over again, used obscene language talking in front of firefighters about his decisions. Carter approached Lt. Aultman and quietly asked him if there were problems Lt. Aultman wanted to discuss with Carter, Lt. Aultman said no. As a result of Lt. Aultman [sic] use of obscene language towards firefighters was also reported to shift supervisor Battalion Chief Ricky Mills.

> 56. Chief Mills told Carter, that he spoke with Chief Marshall about the incident, inter-alia. Carter felt the issues would stop if these incidents were turned over the [sic] Chief Mills. There was no discipline taken against Lt. Aultman, thus enabling the behavior to continue.

The Court considered these allegations and found them insufficient to state a plausible claim for relief:

> Carter's allegations regarding Chief Marshall's treatment of him are also missing facts plausibly suggesting that his differential treatment was based on race. Although Carter alleges that he was subjected to verbal abuse from subordinates . . . the Amended Complaint provides no factual allegations regarding the race of his subordinates or the content of this alleged abuse such that the Court could conclude that this verbal abuse was based on his race or permitted because of his race.

*Mitchell*, 2019 WL 3322634, at *6. Carter now alleges the same "verbal abuse," the same "obscene language," and the same complaint to the same supervisor.

> 20. Carter has been suffering from verbal abuse from members of the NFO since 2016. One incident in particular, Lt. Aultman again used obscene language talking in front of firefighters about my decisions. Carter approached Lt. Aultman and quietly asked him if there were problems he wanted to discuss with me and he said no. This was also reported to shift supervisor Battalion Chief Ricky Mills.

(Doc. 1 at ¶ 20.) Because his new disparate-treatment and hostile-work-environment claims rest on the same factual predicates as his claims in *Mitchell*, they are the same causes of action for purposes of *res judicata*.

**3.**

Unlike Hemphill and Carter, Pruitt's disparate-treatment and hostile-work-environment claims are not the "same causes of action" he litigated in *Mitchell* because they rest, at least in part, on harms that happened *after* his dismissal from *Mitchell*. He contends that in November 2019 Marshall "rewrote the requirements" of a vacant position to "exclude older and minority workers,"[6] but this Court dismissed Pruitt's *Mitchell* claims in July 2019—four months before Marshall allegedly rewrote the vacant position's requirements. His claims therefore rely on conduct that took place *after* his dismissal in *Mitchell*, and *res judicata* generally "does not bar a claim that was not in existence at the time of the original action." *Maldonado v. U.S. Att'y Gen.*, 664 F.3d 1369, 1376 (11th Cir. 2011). These claims are not precluded by *res judicata*.

**4.**

Now to the plaintiffs' retaliation claims. The plaintiffs offer two theories of retaliation. First, they claim to have not "received a promotion" since voicing their NFO-related concerns "to the special committee set up" to investigate Marshall.

---

[6]     Pruitt also claims he was "unable to applied [sic] for 40 hour position" because those position were "only available to younger and white employees." "That statement epitomizes speculation and therefore does not amount to a short and plaint statement of [his] claim under Rule 8(a)." *Davis v. Coca-Cola Bottling Co. Cosol.*, 516 F.3d 955, 974 (11th Cir. 2008).

Second, they claim to have "experience[d] a hostile work environment" and a "denial of promotion" as "a result of" suing in *Mitchell*.

In *Mitchell*, the Court considered and dismissed the plaintiffs' first retaliation claim:

> Plaintiffs allege that Defendants retaliated against them and refused to promote them because they participated in the special investigation of Chief Marshall. Plaintiffs' allegations are due to be rejected because they have failed to allege facts that plausibly indicate that they participated in protected activity under Title VII. Specially, Plaintiffs' grievances submitted to the special committee . . . and Plaintiffs' allegations regarding the special investigation could not plausibly be construed as protected activity. Neither the grievances nor the facts alleged by Plaintiffs plausibly indicate that Plaintiffs had a good faith, objectively reasonable belief that they were opposing any practice made unlawful under Title VII through the special investigation or that Plaintiffs were participating in a protected activity through the special investigation.

*Mitchell*, 2019 WL 3322634, at *8. Since the plaintiffs now allege the same complaint, the same special investigation, the same committee, and the same harm, this first theory is the same "cause of action" they litigated in *Mitchell*.

*Res judicata* does not preclude the plaintiffs' second retaliation claim. Claim two rests on post-*Mitchell* conduct/harm and, as explained above, the doctrine (generally) doesn't bar "claims that arose after the original complaint was filed in the prior action." *Sherrod v. Sch. Bd. of Palm Beach Cnty.*, 272 F. App'x 828, 829–30 (11th Cir. 2008).

**5.**

In short, *res judicata* precludes

- Hemphill's disparate-treatment and hostile-work-environment claims

- Carter's disparate-treatment and hostile-work-environment claims

- The plaintiffs' retaliation claims to the extent they rely on complaints made to the "special committee"

The parties litigated and the Court ruled upon each of these in *Mitchell.*

*Res judicata* does not apply to (1) Pruitt's claim for disparate-treatment discrimination and a hostile work environment or to (2) the plaintiffs' retaliation claims *to the extent* they rely on post-*Mitchell* harms—i.e., their second theory of retaliation. Whether these remaining causes of action satisfy the pleading requirements of Federal Rule of Civil Procedure 8(a)(2) is a separate question.

## B. Every Cause of Action Not Barred by *Res Judicata* Fails to State a Plausible Claim for Relief.

Pruitt hasn't alleged sufficient facts to raise his Title-VII disparate-treatment claim "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Title VII prohibits "discriminat[ion] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). And although "a Title VII complaint need not allege facts sufficient to make out a

classic *McDonnell Douglas* prima facie case, it must provide enough factual matter (taken as true) to suggest intentional race discrimination" against the plaintiff. *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) (internal quotations and citations omitted).

Pruitt has not alleged sufficient factual matter, taken as true, to plausibly suggest he suffered intentional discrimination. Pruitt claims that Marshall rewrote a position's requirements "to exclude minorities," but he never explains how *he* suffered from the position's alteration. In other words he never explains how the rewritten position affected him or caused him to suffer intentional discrimination. Did Pruitt apply for the "rewritten" position? If yes, then was his application rejected? If no, did he intend to apply for the position before Marshall changed its requirements? If not, then how did Marshall's actions result in unlawful and intentional discrimination against him? *EEOC v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1024 (11th Cir. 2016) ("Given the EEOC's disparate treatment claim, the proposed amended complaint had to contain sufficient factual allegations to set out a plausible claim that CMS intentionally discriminated against Ms. Jones, **individually**, because of her race.") (emphasis added). Without more detail and factual support—without some connection between the vacant position and Pruitt—nothing suggests the department discriminated against him, individually, because of

his race. As of now, his disparate-treatment claim stands on conjecture and guesswork, not a plausible claim of intentional discrimination.

Pruitt's claim for a hostile work environment appears to rest on the same vague allegation—that Marshall "rewrote" a vacant position's requirements to exclude minority applicants.  But without more detail and factual support to connect Marshall's conduct or the vacant position to Pruitt, his allegation "falls well short of the level of either severe or pervasive conduct sufficient to alter [Pruitt's] terms or conditions of employment." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1247 (11th Cir. 1999). A hostile-work-environment claimant must allege that "he has been subject to unwelcome harassment," *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002), and Pruitt has not linked the alleged harassment to him, individually.

Finally, the plaintiffs' remaining retaliation claim—that they "have continued to experience a hostile work environment and denial of promotion as a result of" their *Mitchell* lawsuit—also fails for a lack of factual support. Title VII's antiretaliation provision prohibits an employer from discriminating against an employee "because he has opposed any practice made an unlawful employment practice [by Title VII], or because he has made a charge, testified, or participated in any manner in an investigation, proceeding, or hearing" thereunder. 42 U.S.C. §

2000e-3(a). To prevail, a plaintiff must show that "(1) [he] engaged in an activity protected under Title VII; (2) [he] suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (citing *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)).

At this point the plaintiffs have not pled an adverse employment action because they alleged no facts—zero—to support their conclusory hostile-work-environment allegation. Legal conclusions like "hostile work environment" and "denial of promotion" offer neither detail nor context. How, after filing their complaint in *Mitchell*, was the department's workplace "permeated with discriminatory intimidation, ridicule, and insult?" *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993). And which promotions were they denied? Because the plaintiffs' retaliation claims rest on legal conclusions and because legal conclusions are not afforded a presumption of truth, the plaintiffs have not plausibly alleged an adverse employment action. Their second theory of retaliation, while not precluded by *res judicata*, is therefore due to be dismissed.

## C.   Even Without *Res Judicata*, the Plaintiffs' Have Failed to State Plausible Claims for Relief.

Even without *res* judicata, the plaintiffs' claims fail under Rule 8(a)(2). Each claim is conclusory and bereft of factual support.

***Hostile Work Environment***: The plaintiffs, for instance, accuse Marshall of implementing "procedures, policies, [and] practices that provided a hostile work environment for the plaintiffs," but they never (a) identify those policies or (b) link them to race-based harassment. They accuse Lieutenant Aultman of "obscene language," but they never accuse him of racial slurs or racially-charged insults. And they accuse Marshall of "close scrutiny" and "harsh discipline," but even if that's true, close scrutiny and harsh discipline is a far cry from a "work environment . . . so pervaded by [racial] discrimination that the terms and conditions of employment [are] altered." *Vance v. Ball State Univ.*, 570 U.S. 421, 427 (2013).

***Racial Disparate Treatment***: The plaintiffs' disparate-treatment claims likewise fall short—even without *res judicata*. They say Marshall preferred and promoted NFO-affiliated firefighters; non-membership in the NFO, however, is not a protected characteristic under Title VII. And while they claim to have been "treated differently and disciplined more harshly than similarly situated white employees," they don't support these conclusions with well-pleaded factual allegations. *Davis*, 516 F.3d at 974 (holding that similar statements "epitomize[] speculation and therefore do[] not amount to a short and plain statement of [the] claim under Rule 8(a)").

*Retaliation*: Finally, and even without *res judicata*, the plaintiffs have not pled plausible retaliation claims. They claim to have "voiced their [NFO-related] concerns" to a special committee, but, as the Court explained in *Mitchell*, "neither the grievances nor the facts alleged . . . indicate [the] [p]laintiffs had a good faith, objectively reasonable belief that they were opposing any practice made unlawful under Title VII." *Mitchell*, 2019 WL 3322364, at *8. They claim to have suffered "hostile work environment" and "denial of promotion" after filing in *Mitchell* but, as the Court explained above, they offer no facts to support these vague contentions.

For the most part, the plaintiffs have recycled allegations from *Mitchell*. Down to the phrasing and typographical errors, their current complaint rehashes their *Mitchell* complaint. For the reasons explained here and for the reasons explained in *Mitchell*, all of their claims would fail for a lack of plausibility, even if they weren't precluded by *res judicata*.

### D.   Leave to Amend

If the plaintiffs can, consistent with Federal Rule of Civil Procedure 11, allege sufficient facts to state plausible claims for relief, then they have leave to (a) amend their complaint and (b) reallege their non-precluded claims. That is they have leave to reallege Pruitt's disparate-treatment and hostile-work-environment claims and their retaliation claims *to the extent* they rely on retaliation suffered after they filed

their complaint in *Mitchell*. *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). (Generally, "a plaintiff must be given at least one chance to amend . . . before the court dismisses the action with prejudice."). The plaintiffs do not have leave to reallege any claim barred by *res judicata*. *Res judicata* precludes those claims as a matter of law; any amendment would be futile. *See Mann v. Palmer*, 713 F.3d 1306, 1316 (11th Cir. 2013).

## IV. Order

For the reasons just explained,

- Hemphill's disparate-treatment and hostile-work-environment claims are precluded by *res judicata* and **DISMISSED WITH PREJUDICE**;

- Carter's disparate-treatment and hostile-work-environment claims are precluded by *res judicata* and **DISMISSED WITH PREJUDICE**;

- The plaintiffs' retaliation claims are precluded by *res judicata* and **DISMISSED WITH PREJUDICE** to the extent they rely on complaints made to the "special committee set up by the mayor." Their retaliation claims are not precluded to the extent they rely on retaliation that took place after they filed their complaint in *Mitchell*.

- The plaintiffs' non-precluded retaliation claims and Pruitt's disparate-treatment and hostile-work-environment claims are due to be dismissed for failure to state a plausible claim. The plaintiffs have eleven (11) days from this Order's entry to (a) amend their complaint and (b) allege plausible claims for relief, assuming such can be done in good faith. If the plaintiffs do not file a timely amended complaint then the Court will dismiss these claims with prejudice.

**DONE** and **ORDERED** on April 19, 2021.

_____
L. Scott Coogler
United States District Judge

203323